Meier v. Meier.

MEIER v. MEIER et al., Appellants.

DIVISION ONE.

1. **Deed of Trust**: SUBSEQUENT CONVEYANCE BY GRANTOR. A sale under a deed of trust extinguishes the title created by a deed made by the grantor, after the execution of the deed of trust.

2. ———: NOTES, MATURITY OF. A provision in a deed of trust, that if default occurs in the payment of any of the secured notes, then all are to become due is valid, and authorizes the trustee to sell for the payment of all the unpaid notes on default in the payment of any one of them.

3. ———: SALE: NOTICE. After a long lapse of time a trustee's sale will not be set aside because the notice of sale did not designate between what hours the sale was to take place, especially where neither the deed of trust nor the statute expressly requires that the notice should state the hour of sale.

4. **Evidence:** LOST LETTER: PROOF OF CONTENTS. Where diligent search has failed to discover a lost letter, its contents may be shown by parol, even though it was written in a language which the witness could not read, where the letter had been accompanied by a translation, the correctness of which had been virtually admitted in another suit between the same parties, for the same cause of action.

5. ——: DECLARATIONS: LETTERS. Letters written by one in possession of land either in person or by tenant, containing declarations in disparagement of his title, are admissible in evidence against him.

6. ——: —— : ——. Evidence of acts and declarations, made after the statute of limitations is claimed to have run in his favor, is admissible where it has a tendency to show the motives of the declarant and the nature of his occupancy.

7. **Land:** POSSESSION: HUSBAND AND WIFE. Where the grantor in a deed of trust continues to reside on the land with his wife, after the foreclosure sale, it will be presumed that he and not his wife is the party in possession, even though he had previously conveyed to her his equity of redemption.

8. ——: ——. The fact that a person in possession of land rented part of it in his own name to a tenant, and had wood cut from it on shares, is not inconsistent with the permissive character of the possession, especially where it appears that the person having the legal title was not aware of the fact that the party in possession had rented a portion of the land to another, and, besides, let him have the land rent free, and also furnished money for his support.

9. **Mortgage:** NOTICE. The record of a deed given by a mortgagor after execution of the mortgage does not constitute notice to the mortgagee.

10. **Ejectment:** VERDICT. A verdict in ejectment which is accurate enough to embrace the land in dispute is sufficient.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*James Carr* for appellants.

(1) The trustee had no authority to sell under the deed of trust; only one of the secured notes was due, and the sale was premature. (2) The deed made by

Thomas J. Meier and wife to Herman H. Meier as trustee for Alvina Meier, dated April 9, 1857, conveyed the equity of redemption of said land in trust for the separate use and benefit of Alvina Meier, and it is color of title. *Railroad v. Clark*, 68 Mo. 371 ; *Hamilton v. Boggess*, 63 Mo. 233. Herman H. Meier was a mere naked trustee, holding the legal title as a dry trust. Alvina Meier, the *cestui que trust*, had all the time and still has the absolute control over the land in question. R. S. 1879, sec. 3938 ; Perry on Trusts, secs. 520, 521 ; *Roberts v. Moseley*, 51 Mo. 286. (3) Thomas J. Meier, as husband of Alvina Meier, was entitled to hold possession of the land in question as tenant by courtesy initiate, or *jure uxoris*. *Bledsoe v. Simms*, 53 Mo. 305 ; *Cooper v. Ord*, 60 Mo. 420 ; *Mueller v. Kaessmann*, 84 Mo. 318. (4) The possession of Thomas J. Meier, owing to the relationship between him and Alvina Meier, was her possession—inured to her benefit, and being adverse to plaintiff for more than ten consecutive years before the commencement of this suit vested the complete title in Alvina Meier. *Bledsoe v. Simms*, 53 Mo. 305. (5) There is not a scintilla of evidence that Thomas J. ever attorned to the plaintiff. The loose statements made in the two letters—one of them lost and a dispute about what it contained—by Thomas J. Meier to plaintiff do not show or constitute an attornment to plaintiff. Neither does the letter to "Dear Cecilia," dated November 6, 1881, show or constitute an attornment to plaintiff. The last letter was not written to plaintiff. R. S., sec. 3928 ; *Hodges v. Eddy*, 41 Vermont, 485 ; *Campbell v. Gas Co.*, 84 Mo. 353. (6) There is no claim that she ever attorned to the plaintiff, and there is no claim that she ever authorized him to attorn for her. This was her separate property, and as to it she is considered as a *feme sole*. For whom did he hold possession? For her or himself in right of his wife. He never held for or in subordination to the plaintiff's title. The holding all the time

was adverse to plaintiff.   No admissions or statements of his derogatory to her title did or could bind her. She could only be divested of her title in the manner prescribed by the statute.   R. S.   1879, sec.   3295; *McBeth v. Trabue*, 69 Mo. 642 ; *Marshall v. Anderson*, 78 Mo. 85 ; *Huff v. Price*, 50 Mo. 228; *Kanaga v. Railroad*, 76 Mo. 207.   (7)   Alvina Meier could not be estopped by her covenants in a deed.   *A fortiori* she cannot be estopped by acts *in pais*.   *Mueller v. Kaessmann*, 84 Mo. 318 ; *McBeth v. Trabue*, 69 Mo. 642 ; *Bartlett v. O'Donoghue*, 72 Mo. 563 ; *Hord v. Taubman*, 79 Mo. 101.   Thomas J. Meier could not estop her by his statements, declarations and admissions. *Hodges v. Eddy*, 41 Vt. 485.   (8)   The deed from Thomas J. Meier to Herman H. Meier, as trustee for the use and benefit of Alvina Meier, was duly recorded. This was a public act and imparted notice to the plaintiff of her claim to the land.   *Mueller v. Kaessmann*, 84 Mo. 329 ; *Campbell v. Gas Co.*, 84 Mo. 375. (9)   Adverse possession for ten years tolls the entry of the person having the right of entry, and not only bars the remedy but extinguishes the right and vests a perfect title in the adverse holder.   *Leffingwell v. Warren*, 2 Black, 605 ; *Nelson v. Broadhack*, 44 Mo. 596; *Fulkerson v. Mitchell*, 82 Mo. 13.   (10)   Appellant had a perfect title to said land, subject to be defeated only by Adolphus Meier asserting his title within the time prescribed by the statute of limitations.   Time was running against him and was gradually building up Alvina Meier's title.   Her title, although derived from the same grantor as Adolphus Meier, was adverse both to the grantor and Adolphus Meier.   *Society v. Pawlet*, 4 Pet. 506 ; *Blight's Lessee v. Rochester*, 7 Wheat. 535 ; *Macklot v. Dubreuil*, 9 Mo. 47 ; *Jaeckel v. Easton*, 11 Mo. 118 ; *Scruggs v. Scruggs*, 43 Mo. 142.   (11)   It has been shown that Thomas J. Meier could not by any oral admissions, declarations or acts *in pais* divest Alvina Meier of her title to said land.   See authorities

Meier v. Meier.

cited under sixth point. If it be regarded as her separate property, he could not divest her of her title. He was not her agent. He had no authority from her to say or do anything that would divest her of her title. She could not be divested of her title without her authorization or consent. *Garnett v. Berry*, 3 Mo. App. 8; *Eystra v. Capelle*, 61 Mo. 578; *Hord v. Taubman*, 79 Mo. 101. (12) The verdict did not find on all the issues submitted to the jury, and was indefinite and uncertain.

*Zach J. Mitchell* and *Charles Nagel* for respondent.

(1) Respondent established the unquestioned paper title, which wiped out every other title in the case. This gave him legal seizin and possession; and upon this title he had the right to rest, throwing on defendant the burden to defeat it as she might. *Husley v. Wood*, 55 Mo. 252. (2) It is at least doubtful whether Thomas J. Meier, as the original mortgagor, or appellant, Alvina Meier, as grantee subject to said mortgage, or as continuing the possession of her said husband, could claim adversely to respondent, the original mortgagee and subsequent grantee. Buswell on Limitations & Adverse Possession, sec. 312. The law in this state seems to require positive notice, in such a case, of an intention to change friendly and subordinate, into adverse, possession. *Budd v. Collins*, 69 Mo. 129; *Hamilton v. Boggess*, 63 Mo. 233. (3) And, if the right to so hold adversely to respondent without such notice be conceded, it still nowhere distinctly appears (as it is submitted it should) whether appellant claims under the original deed to her husband, or under the deed to Herman Meier, trustee, subject to the prior mortgage to respondent. And it is even doubtful whether the adverse possession of the widow could be tacked to the adverse occupancy or the husband. *Sawyer v. Kendall*, 10 Cush. (Mass.) 24. (4)

But waiving all these questions, inasmuch as appellant made no effort to defeat the paper title other than by reliance on the statute of limitations, she was clearly under as complete obligation as any other litigant to show not only possession for the required period of time, but also to establish that said possession was adverse to respondent. *Bradley v. West*, 60 Mo. 33 ; *Avery v. Adams*, 69 Mo. 603 ; *Burke v. Adams*, 80 Mo. 504 ; Sedgwick & Wait, Trial of Land Titles [2 Ed.] secs. 729, 730 ; Buswell on Limitations & Adverse Possession, sec. 227. As a matter of law there is no presumption of adverse possession ; on the contrary, appellant must be presumed to hold in compliance with the legal title. *Lynde v. Williams*, 68 Mo. 360 ; *Morris v. Sellenrieck*, 10 Mo. App. 585. (5) Whatever the title relied upon there was no error in the admission of the testimony. The declarations of Thomas J. Meier, offered by respondent, were clearly admissible. *First.* Because he was the party in actual possession (possibly if not presumably in his own right), and these declarations formed part of the *res gestœ*. Sedgwick & Wait, Trial Land Titles [2 Ed.] sec. 758 ; Buswell on Limitations & Adv. Possession, sec. 243 ; 1 Greenleaf on Ev. [14 Ed.] sec. 109, and notes ; *Burgart v. Borchert*, 59 Mo. 80 ; *Wilson v. Albert*, 89 Mo. 537. Because, even under the deed to the trustee for Alvina and Thomas J. Meier, the husband would have been the proper party defendant in ejectment ; and having sole possession his declarations alone were admissible. *Von Strader v. Taylor*, 7 Mo. App. 363 ; *Meegan v. Gunsellas*, 19 Mo. 417 ; *Hunt v. Thompson*, 61 Mo. 154. *Second.* The circumstance that Thomas J. Meier's letter to his sister Cecilia was written to a third party can be no objection, where the sole purpose is to prove the writer's intention and understanding at the time as to the question now before the court. *Morse v. Diebold*, 2 Mo. App. 163 ; *Wilson v. Albert*, 89 Mo. on page 545. *Third.* Witness Gardiner's testimony was competent, because

it gave his recollection of the contents of a letter, which was shown to be lost, and the translation of which was admitted at another trial to which appellant, Alvina Meier, was a party, and at which she was present. Greenleaf on Ev. [14 Ed.] sec. 183, p. 27. *Fourth.* The other objections to the ruling on testimony offered do not seem to be urged by appellant. (6) And, whatever the theory upon which appellant may now choose to stand, the instructions under which the case went to the jury gave full protection to every possible view of appellant's case. (7) The verdict determined all essential issues submitted to the jury. The cases cited in appellant's brief are not in point. *Caldwell v. Stephens*, 57 Mo. 589; *Simmons v. Hartsock*, 80 Mo. 13. (8) The description of the property is sufficient. Sedgwick & Wait, Trial and Land Titles [2 Ed.] secs. 459–498–501; *Buse v. Russell*, 86 Mo. 211; *Thiemann v. Meier*, 25 Mo. App. 307.

SHERWOOD, P. J.—Adolphus Meier brought ejectment for the following described land situate in St. Louis county, to-wit: The east half of the northeast quarter, and the west half of the northeast quarter of section 14, township 45. The petition was filed July 26, 1886, and after the usual allegations as to plaintiff's ownership, and being entitled to the possession of the land aforesaid, contains this allegation:

"That, nevertheless, defendants on or about the —— day of March, 1885, unlawfully entered in and upon a part of the said lands and took possession thereof, to-wit: The dwelling-house thereon and improvements incident and attached thereto, together with the southeast quarter of said northeast quarter of said section fourteen (14) as, also, of the timber, pasture lands and uncultivated portions of the remainder of said northeast quarter of said section fourteen (14), and has ever since continued and still continues to wrongfully and

unlawfully withhold the said parts thereof from plain-
tiff, all to his damage in the sum of $500.''

Adolphus Meier having died pending this appeal,
this cause has been revived by consent in this court in
the names of his heirs.

The answer is a general denial—coupled with an
admission of possession.

The evidence showed a clear paper title in Adolphus
Meier, by reason of a deed of trust executed March
5, 1857, to Herman H. Meier as trustee of Adolphus
Meier & Co., by Thomas J. Meier then in possession of,
and the then owner of, the property, and the husband of
Alvina, and the father of the heirs, his daughters ; and
by reason of a sale such deed made March 31, 1858, by
the trustee to Adolphus Meier.

Thos. J. Meier died in the spring of 1882, having
lived on the premises in controversy continuously,
except 1878, when he moved with his family to St.
Louis, then moving back to the farm, remaining there
until the next September, removing then to the Winkel-
meyer or Barron place, on the Clayton road, where he
lived awhile, removing thence to the Gorman place,
from which place he moved back with his family to the
farm.   During these absences, the other defendant,
Cowan, her uncle, and aunt remained in possession of
the place with his permission, and Cowan is still a ten-
ant under Alvina and her daughters.   The theory of
the defense was the statute of limitations running in
favor of Alvina Meier.   Accordingly, a deed of trust
dated the ninth day of April, 1857, recorded on the
same day was introduced in evidence from Thos. J.
Meier and Alvina, husband and wife, to Herman H.
Meier as trustee, whereby the property in controversy
was conveyed to said Herman for the sole and separate
use of said Alvina, during her natural life, and, in case of
her surviving her husband, then for the use and benefit
of her and her heirs, etc., etc.   This deed, however, by
a clause therein contained, was expressly made *subject*

*to the prior deed* of trust made to the same trustee by Thos. J., and Alvina Meier, under which the property was sold to Adolphus Meier in 1858.

Various acts also were shown on the part of Thos. J. Meier, which defendants claim amounted to an adverse holding on his part; as, for instance, leases executed by him to Thiemann in 1878, 1879 and 1880 for portions of the premises, for durations of two and three years; also that Thos. J. Meier had rented a portion of the premises to Thiemann and his father for twenty years off and on, as well as to others; also that at various times, running back a period of about seventeen years, Thiemann and his father, at the instance of Thos. J. Meier, had cut cord wood in considerable quantities on the premises, on the shares. None of the leases were recorded and were but little more than brief memoranda of the lease having been made, and of its terms.

Testimony was also introduced to the effect that Thos. J. Meier had rails and fencing made on the premises; had built a cistern, had a new roof made on the dwelling-house, and built a new corn-crib, in 1870 and 1871; built smaller stables and out houses; always rented the farm in his own name, collected the rent, and kept it, Adolphus Meier receiving none of it; and that Adolphus Meier, his brother, visited the family two or three times a year, coming out in his carriage in the morning and returning in the evening to the city, and that he never claimed the property till after Thos. J. Meier's death. There was testimony also, that Thos. J. Meier voted at school meetings as a land-owner; that he had employed an agent to sell the land about the year 1866; that, in 1881, he by deed granted to a railroad company the right of way through the premises, which deed was put to record in 1882 in St. Louis county in which the land lay, and further that he had frequently spoken of the farm to the neighbors as his.

A letter from Thos. J. Meier to said railroad company was also read in evidence, which letter mentioned the farm as "*my farm*" and objected to the railroad survey going through his land except in stated directions ; or if otherwise he would have to claim damages.

There was no testimony that Adolphus Meier was aware that his brother made any claim to the property as his own ; and, in rebuttal of that adduced by the defendants, the following evidence, in substance, was introduced : That Adolphus Meier had paid the taxes on the premises for years, and the receipts for taxes paid, and taken by Adolphus Meier in his own name, for the years 1871 to 1881, inclusive, were read in evidence. Herman H. Meier's deposition was then read in evidence. He was a brother of Adolphus and Thomas J. Meier, and the trustee in the deed of trust aforesaid. He stated that, shortly after the sale made under the deed of trust, in 1858, Thomas J. Meier acknowledged to him that the ownership of the property was in Adolphus Meier. At that time Thomas J. Meier was then living on the place. Thomas J. Meier said also, at that time, "that farm is worth $16,000 at least." He told Adolphus what Thomas J. had said, and Adolphus thereupon said : " Let them find a purchaser ; I shall be very glad to sell it, and, if they can get more for the farm than my claim comes to, I will make a present of the difference to Alvina Meier for the benefit of herself and children." "It was not to be touched by my brother, Thomas J. Meier, because he was then drinking very much."

This conversation with Adolphus was soon after communicated by Herman to Thomas J. Meier, and the latter was told by Herman to try and find a purchaser for the farm. This conversation was repeated by Herman to Thomas J. five or six times, and several of those times Alvina was present, and witness remarked to her : "Alvina, I hope that the good intentions of Adolphus

can be realized." The witness stated that he said this, "because I knew they had nothing."

He also stated that he knew Thomas J. Meier and his family lived on the farm by permission of his brother, Adolphus, and that they paid no rent; Thomas J. had often told him so, and told him, further, that his brother Adolphus "furnished the money for them to live by;" and that, shortly after the deed-of-trust sale, everything that Thomas J. had of personal property was sold under an execution sale, and bought in by witness for the benefit of his brother, Thomas J., who never repaid him for the money thus expended.

This witness was then asked if he knew of any written acknowledgment by Thomas J. Meier to the effect that his brother, Adolphus, owned the farm. "Exhibit B" was then shown witness, and, in response to the question, he said that he knew of one, and that was this exhibit, which was in German, in the handwriting of Thomas J. Meier, and signed by him. This exhibit is spoken of in the record as being attached to the deposition, and as having been offered in evidence by plaintiff's counsel, but it has not been preserved. This letter is also spoken of by counsel for defendants, in their abstract, as having been written in 1878.

A. M. Gardiner, an attorney at law, then testified as to the contents of a letter written by Thomas J. to his brother, Adolphus Meier, which had been used by him as counsel for the defendants in the case of said Alvina Meier v. Henry Thiemann, wherein she, as plaintiff and the assignee of the claim of her daughters, brought an action of unlawful detainer against Thiemann for a portion of the land involved in this suit, under a lease made to him by Thomas J. Meier. This letter was translated, and its authenticity either proved or acknowledged at the trial of that cause, and read in evidence by both parties, not only in the circuit court, but in the court of appeals, and was in that court lost or mislaid, and, after diligent search, could not be found. The

substance of this letter was to the effect that the writer, Thomas J., begged of his brother, Adolphus, either to sell him or to rent him a few acres on the farm near the road.

Plaintiff then offered in evidence a letter, dated November 6, 1881, written by Thomas J. Meier to his sister, Cecilia, in which he says, among other things: "Brother Adolph intends to sell the farm as soon as possible; you may, perhaps, know that Adolph bought in the farm many years ago." "Brother Adolph gives me $30 per month, and, with the product of the farm, I can barely make both ends meet by careful management. But, if brother Adolph should sell the farm, and he says he would do so rather to-day than to-morrow, I would not know what to do, for I could not possibly pay everything with $30."

Other evidence was also offered by plaintiff, as follows: The affidavit for no process on the estate of Thomas J. Meier, deceased, made by defendant, Alvina Meier, on the seventh day of January, 1883, showing that, at the time, she estimated said estate to be worth $550, and to consist of the personal property exclusively.

The order of the court, made upon said affidavit, that letters on said estate be refused.

Also, the petition of appellant, Alvina Meier, and her three daughters, against Adolphus Meier, to quiet title to the land in question, filed March 26, 1883, which alleges that Alvina Meier has a dower interest in the land, and that the three daughters are heirs at law, subject to the dower interest. Also, the record showing dismissal of said petition.

To rebut this evidence, the defendants introduced the following testimony: Johanna L. Meier testified that she saw her father write the letter to Adolphus Meier, referred to by Mr. Gardiner. Her father read it to her, and she took it to the city and mailed it. It was written in 1880 or 1881. He only requested Adolphus Meier to sell the farm for him as his agent, as Adolphus

lived in the city, and would likely meet more persons wanting to buy than her father; that her father wanted to reserve ten acres, if Adolphus should find a buyer. He said nothing in the letter about Adolphus Meier being the owner of the land.

Louisa Meier testified that she was at Clayton at the time of the trial, and heard the letter, referred to by Mr. Gardiner, read on the trial. She says that her father did not recognize Adolphus Meier as the owner of the land; that he simply requested Adolphus Meier, as the owner of the land, to act as his agent in selling the farm; and to reserve ten acres on the southeast corner of the land; as it was a higher location, he preferred living there. He thought it would be healthier there. He treated Adolphus Meier just as he did Mr. Denny, when he authorized him to sell it, *i. e.*, as an agent.

At the close of the testimony, the court, at the instance of the plaintiff, gave the following instructions: "1. The court instructs the jury that if they believe, from the evidence, that plaintiff acquired title to the property in dispute, by deed, from Herman Meier, trustee to plaintiff, dated March 1, 1858, introduced in evidence, then they must find for plaintiff, unless they believe the defendant is entitled to your verdict, by reason of title acquired by adverse possession, as explained in instruction, numbered 2.

"2. The court instructs the jury that one who holds the open, notorious, continued, uninterrupted, adverse and actual possession of real estate for the period of ten years or more, either through himself or tenants, acquires the legal title to the property as fully as if he had acquired the same by deed from the true owner. Therefore, if you believe that either Thomas J. Meier or his wife, during his life, acting through him and his widow, since his death, have held, either themselves or through their tenants, the open, notorious, continuous, uninterrupted, adverse and actual possession of the

premises described in the petition, for ten consecutive years, at any time during the period commencing with the delivery of the trustee's deed to Adolph Meier, read in evidence and ending with the institution of this suit, you must find for the defendant.

"3. By adverse possession, as used in these instructions, is meant a possession indicated by such acts of possession and ownership exercised over the property as indicates to the world at large, including the owner of the legal title, that the party in possession claims the property as owner in his own right, and not subordinate to any other person. The possession must be such as to be hostile to, and inconsistent with, the right of ownership in the person who may hold the true paper title.

"4. Occupation of, and acts of possession and ownership exercised over real estate, as the agent or tenant, or by permission of another, is not adverse to such person.

"5 If the jury believe from the evidence, that Thomas J. Meier was in adverse possession of the property in suit, at his death, the continuity of the adverse possession was not interrupted, if such adverse possession was continued by Alvina Meier and the children of Thomas J. Meier, claiming the property as the widow and heirs of Thomas J. Meier.

"6. The court instructs the jury that where one takes possession of, and claims title as owner in good faith to, a whole tract of land, by virtue of a deed describing said land, that acts of possession and ownership over a part of the tract are acts of possession and ownership over the whole tract.

"7. The court instructs the jury, that, if the jury find the issues for the plaintiff, they will find that he recover of defendants the possession of the lands and premises in plaintiff's petition described, and, against defendant, Alvina Meier, such damages as the jury may find from the evidence is the value of the rents

and profits of such lands and premises, from July 26 1886, to the date of the verdict herein ; and the jury will also find in the verdict, from the evidence, the monthly value of the rents and profits of said lands and premises.

"8.    The court instructs the jury that Ellen Cowan, defendant herein, claims under defendant, Alvina Meier ; and, if the jury find for plaintiff and against defendant, Alvina Meier, then they, the jury, must also find against said Ellen Cowan for possession, without any damages as against defendant, Ellen Cowan."

And, on the part of the defendants, gave the following instructions:    "1.    If the jury believe from the evidence, that Thomas J. Meier and his family entered into possession of the land described under the deed from Michael Hardegen and wife, read in evidence, and held and occupied said tract of land until the time of the sale, on the thirtieth day of March, 1858, by Herman H. Meier, as trustee under the deed of trust, read in evidence ; that said Thomas J. Meier, with his family, continued in the open, continuous, notorious, uninterrupted, adverse and actual possession of said tract of land, either by himself and family or his tenants, claiming title to the whole of said tract of land, and after the death of said Thomas J. Meier, his widow and heirs continued in the open, notorious, uninterrupted, adverse and actual possession of said tract of land either by themselves or their tenants, until the commencement of this suit, claiming title to the whole of said tract of said land, then plaintiff is not entitled to recover the portion of said tract of land sued for, and they will find for the defendants.

"2.    If the jury believe from the evidence that Thomas J. Meier had the open, notorious, continuous and adverse possession of the premises in question, claiming them as his own hostilely to the plaintiff for the period of ten consecutive years, claiming said premises as his own, such adverse possession inured to

the benefit of defendant, Alvina Meier, and the plaintiff is not entitled to recover, and they must find for the defendants."

Other instructions asked by defendants, but refused by the court, were the following: "3. If the jury believe from the evidence that Thomas J. Meier with his family did, under the deed from Michael Hardegen and wife to him, read in evidence, enter into possession of a part of the land described in said deed in the name of the whole tract, claiming title thereto, and continued in such possession from the time of so entering into possession thereof until the time of his death, and exercised during the time of said possession the usual acts of ownership over the whole tract; that, after the death of said Thomas J. Meier, his widow and daughters continued in such possession until the commencement of this suit, exercising during said time the usual acts of ownership over the whole of the tract so claimed, then they will find that said Thomas J. Meier and his widow and daughters had possession of the whole tract.

"4. The jury are instructed that the plaintiff is not entitled to recover possession of the premises sued for, unless he was seized or possessed of said premises within ten years before the commencement of this suit.

"5. The jury are further instructed, that the plaintiff's right to sue for the premises in question, accrued immediately after the sale of said premises to him on the thirtieth day of March, 1858, by Herman H. Meier, as trustee, under the deed of trust read in evidence, and limitation commenced running from that time against the plaintiff, unless Alvina Meier acknowledged plaintiff's title and held as tenant under plaintiff within ten years before the commencement of this suit.

"6. The jury are further instructed that the possession of Thomas J. Meier, with Alvina Meier, of the premises in question, was in law the possession of Alvina Meier, and the statute of limitation commenced running in her favor against the plaintiff from the time

of the sale to plaintiff by Herman H. Meier, as trustee, on the thirtieth day of March, 1858.

"7.   If the jury believe, from the evidence, that Thomas J. Meier and his wife, Alvina Meier, were in possession of the land in question at the time when said Thomas J. Meier and wife made the deed to Herman H. Meier, as trustee, for the defendant, Alvina Meier ; that they continued in such possession from said time until after the death of said Thomas J. Meier, and after his death the defendant, Alvina Meier, continued said possession by herself, or tenants, until the commencement of this suit; that during all said time said Thomas J. Meier, and said defendant exercised the usual acts of ownership over said premises ; that said possession was open, continuous, notorious, uninterrupted, adverse and actual during said time, or for a continuous period of ten years, then the plaintiff is not entitled to recover, and the jury must find for the defendants.

"8.   The jury are further instructed, that the sale of said premises to the plaintiff on the thirtieth day of March, 1858, by Herman H. Meier, as trustee, under the deed of trust read in evidence, vested the seizin in said premises described in said deed in the plaintiff, and the plaintiff is entitled to recover the premises sued for, unless said seizin in the plaintiff has been divested by the adverse possession of Alvina Meier, or of Thomas J. Meier and his widow and daughters for ten years as defined in instruction, numbered ——, or said Alvina Meier acknowledged the title of the plaintiff, and held said premises as tenant under him within ten years before the commencement of this suit.

"9.   The jury are instructed that no act, declaration or admission of Thomas J. Meier can prejudice any right which the defendant, Alvina Meier, had or has to the premises described in the deed from Thomas J. Meier and his wife to Herman H. Meier, as trustee, for the defendant, Alvina Meier.''

Thereupon, the jury brought in this verdict :

"We, the jury, find that plaintiff is entitled to the possession of the premises described in his petition as follows, to-wit: The following described tracts and parcels of land situated in the county of St. Louis and state of Missouri, to-wit: The dwelling-house and all improvements incident and attached thereto situated on the northeast quarter of section 14, township 45, north of range 5, east. Also the southeast quarter of the northeast quarter of said section 14. And also the timber, pasture lands and uncultivated portions of the remainder of said northeast quarter of said section 14. And we assess plaintiff's damages for the unlawful withholding of the same at the sum of one dollar ( $1 ), against the defendant, Alvina Meier, and we find the monthly value of the rents and profits of said premises to be —— dollars.          F. L. HASTEDT,
                                    "Foreman.

" We also find for plaintiff as against Ellen Cowan, without damages."

I.   The title of Thomas J. Meier to the property in dispute having been acquired in 1851, the only title his wife acquired was an inchoate right of dower; but even this inchoate right of dower was relinquished and surrendered in the deed of trust first mentioned, and any other right she may have acquired, by reason of the deed made in her favor to Herman H. Meier, was expressly made subordinate to the first deed, and, when the sale thereunder occurred, it swept away every trace of right or title which either she or Thos. J. had in the premises. Whenever a valid lien is in existence, its foreclosure wipes out of existence all titles subsequent in date to the first lien. *Huff v. Morton*, 94 Mo. *loc. cit.* 410.

II.   These remarks are, however, based upon a theory of a valid sale under the deed of trust. That deed containing, as it did, a provision that if default occurred in the payment of any one of the notes, etc., that then

all should become due, gave the trustee full authority to sell the land for the payment of *all* the notes. Parties are free to contract in this regard as they may deem fit, and their contracts thus made are binding. *Brownlee v. Arnold,* 60 Mo. 79 ; *Waples v. Jones,* 62 Mo. 440; *Noell v. Gaines,* 68 Mo. 649, and cases cited.

III.   Objection was made in the trial court that the notice of the trustee's sale does not specify between *what hours* the sale was to occur.   The statute then in force, section 20, page 1091, 2 Revised Statutes, 1855, which is identical with section 7091, 2 Revised Statutes, 1889, did not require that the *hour* of sale should be designated in the advertisement, and, when neither the statute nor the deed of trust require such designation, a failure in this regard will not invalidate the sale, if it be fairly conducted.   2 Jones on Mort. [ 4 Ed.] sec. 1846.

And even if the statute does require that the hour of sale be designated, and that it occur between certain hours, long acquiescence of the mortgagor in a sale where no hour had been specified, in one instance twelve years, was held to cure the defect and avoid the irregularity.   *Mernard v. Crowe,* 20 Minn. 448 ; *Hamilton v. Lubukee,* 51 Ill. 415.   The general rule as to irregular or voidable sales is that long delay in attacking them cures any such irregularity, and makes valid that which otherwise might have been avoided.   *Scott v. Freeland,* 7 Sm. & M. 409 ; 2 Jones on Mort., secs. 1054, 1674, 1965, and cases cited.   In this case twenty-four years had elapsed between the sale under the deed of trust and the death of the acquiescing mortgagor.   In such circumstances it will be presumed that the trustee did his duty in the conduct of the sale.   The law always presumes in favor of the orderly conduct of affairs, and requires evidence to establish assertions to the contrary.

IV.   There was no error in receiving the testimony of A. M. Gardiner respecting the contents of the lost

letter ; he was conversant with its contents, and diligent search in the locality where it was last deposited failed to discover it.    And it did not matter that the original was in a language the attorney could not read, since it was accompanied by a translation, the correctness of which was virtually admitted in a trial between the same parties in relation to the possession of the same subject-matter, by being read at that trial by both parties and subsequently used by them to supply an omission in the transcript of that cause on appeal.    It is too late to raise any question of the correctness of that translated letter now.

V.    Nor was any error committed in admitting the letter addressed to " *Dear Cecilia.*"    That letter was as clearly admissible as would have been the verbal admissions of Thos. J. Meier, made to any third person, and certainly far more reliable.

These letters written by Thomas J. Meier as well as the one testified to by Herman H. Meier, as "Exhibit D," were declarations of a party in possession of real property and in disparagement of his title and explanatory of his possession, and were receivable according to the views generally entertained by the authorities. Greenl. Ev. [ 14 Ed ] sec. 109, and cases cited; *Anderson v. McPike*, 86 Mo. 293.

VI.    And even if Thomas J. Meier at the time any of these letters was written was not in the *actual* occupancy of the premises, but was in possession of them by a tenant, his declarations would be of equal binding and disparaging force, as if made and uttered while in the *actual* possession of the premises ; the same principle would apply as well in the one case as in the other.

VII.    And evidence of acts and declarations, made after the statute is claimed to have run, are admissible where they have a tendency to show the motives and views of the declarant and the nature of his occupancy. Sedgwick & Wait on Tr. Tit. to Land [ 2 Ed.] sec. 758, and cases cited.

VIII. The letters already referred to, as well as the verbal admissions of Thomas J. Meier to his brother Herman H. Meier, if believed by the jury to have been written and uttered by Thomas J. Meier, were conclusive of the rights of all claiming under him, which is the only attitude possible for the defendants to take, because Thomas J. Meier was the only one in the actual occupancy of the premises after the sale under the deed of trust occurred. There could not be but one actual seizin or occupancy of the premises at the same time, and the law will attribute that occupancy to the husband, and not to his *wife*. He was the former owner, and if there was any adverse possession it was on *his* part, and not upon *hers ;* and if any credence is to be given to his written admissions, and to his verbal utterances, his possession was a mere *permissive possession*, and such a one cannot be made the basis for the statute of limitations. " In the absence of evidence to the contrary, if there be possession of land by another than the true owner, the presumption of law is, that such possession is in accord with, or in subservience to, the true title and the legal possession of the owner." Sedgwick & Wait, Tr. Tit. Land [ 2 Ed.] sec. 729, and cases cited. And this is true, no matter how long such permissive possession shall continue. "Every presumption is in favor of possession in subordination to title of the true owner." Abbott, Trial Evid. 715, and cases cited.

As stated by Judge MILLER in *Harvey v. Tyler*, Wall. 349 : "There must be title somewhere to all the land in this country, either in the government, or in some one deriving title from the government, state or national. Anyone in possession, with no claim to the land whatever, must in presumption of law be in possession in amity with, and in subservience to, that title."

There can be nothing clandestine or stealthy about adverse possession. The statute cannot be made to

subserve the purposes of artifice or trick. *Potts v. Coleman*, 67 Ala. 228; *Sailor v. Hertzogg*, 2 Pa. St. 185. "The owner will not be condemned to lose his land, because he failed to sue for its recovery, when he had no notice that it was held or claimed adversely." Sedgwick & Wait, Tr. Tit. Land, sec. 730. In short, in order "to constitute an effectual adverse possession two things must concur: *First*, the ouster of the real owner, followed by an *actual possession* by the adverse claimant; and, *second, an intention* on the part of the latter to so oust the owner and possess for himself; or, as it is sometimes called, there must be a 'claim of right' or 'title' in himself adverse to the true owner." Sec. 729.

In this case, as the first possession of Thomas J. Meier after the trustee's sale was evidently *permissive*, in order to initiate a hostile holding against his brother Adolphus, it required some such *positive* and *affirmative* act as would at once apprise Adolphus of a change in the nature and intention of his holding. Nothing short of this would suffice. Angell on Limit. [6 Ed.] secs. 384, 385. There is no evidence of this sort to be found in this record. "In all cases where a party is in possession of land in privity with the rightful owner, nothing short of an open and explicit disavowal and disclaimer of a holding under that title, and assertion of title in himself brought home to the owner, will satisfy the law. Tyler on Eject., p. 876. The above quotation is approvingly made by this court in *Budd v. Collins*, 69 Mo. 129.

It is true that Thomas J. Meier gave leases and rented portions of the land from time to time; and had cord wood cut on the shares; but these acts were not absolutely inconsistent with his brother's ownership in the land, especially so, if his brother let him have the land rent free and furnished the money on which he lived. Besides, it does not appear that Adolphus Meier was ever made aware of these acts of his brother, Thomas J.

IX.   As to the claim of Alvina Meier to the ownership of the premises, it may be remarked in addition to what has already been said on that point, that the deed made to Herman H. Meier for her benefit, having been made subsequently to the deed of trust under which the property was sold, imparted no notice to Adolphus Meier, at that time occupying the position of prior mortgagee ; for one in his situation is not bound to search the records to see if his mortgagor makes subsequent deeds. 2 Jones Mortg., sec. 1624.

X.   The foregoing observations are sufficiently comprehensive in their scope to show that the instructions which the court gave at the instance of the plaintiff, and those given on behalf of the defendants, furnished a a full guide to the jury as to the issue joined by the pleadings, and to show that those instructions which the court refused to give were properly refused.

XI.   The last point for consideration is the sufficiency of the verdict to support the judgment.   On this point no doubt is entertained, since, though it might have been much shorter, it is regarded as sufficiently accurate and comprehensive to embrace the land in dispute, and this is all that is required.   Sedgwick & Wait, Tr Tit. Land, secs. 459, 498, 501.   *Buse v. Russell*, 86 Mo. 211.   Judgment affirmed.   All concur.