## STEWART v. MILES, Appellant.

### Division Two, December 17, 1901.

Lease: SUBTENANT: LICENSE: SURRENDER TO ADVERSE CLAIMANT: EFFECT. Plaintiff, in possession of a farm as lessee, engaged his brother to keep house and assist in working the farm, for which he was to have one-half of plaintiff's share of the crop. While plaintiff was temporarily off the farm, defendant, by the payment of $2 to the brother, induced him to leave the farm, and let defendant into possession. *Held*, that, whether the brother was a subtenant or licensee of plaintiff, he (the brother) could not dispute or impair plaintiff's right of possession, or give any right of possession to one claiming adversely to him.

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT AFFIRMED.

*Martin & Woolfolk* for appellant.

(1) The facts in the case all show that plaintiff's claim of possession at the time defendant entered is not bona fide but a mere pretense and sham. He was not there—had nothing there, and by his contract of hiring to Magruder shows that he did not intend to return. His acts are inconsistent with his claim. De Graw v. Prior, 60 Mo. 56; Keen v. Schweiggler, 70 Mo. App. 409. (2) Before the action of forcible entry

and detainer can be maintained, the plaintiff must be in exclusive possession when the ouster is made.    There can be no question that William Stewart was in possession when defendant entered.    Whether jointly with plaintiff or for himself, can make no difference.    Armstrong v. Hendricks, 67 Mo. 542; Ford v. Fellows, 34 Mo. App. 630; Willis v. Stephens, 24 Mo. App. 494.    (3)    And the evidence must show that defendant was in possession when the suit was brought.    Armstrong v. Hendricks, 67 Mo. 542.    (4)    There is not a particle of evidence that shows that defendant obtained possession by force, threats or fraud, or against the will of the person in actual possession, but, on the contrary, every fact proved in the case shows that defendant obtained peaceably and with the consent of William Stewart who was in possession.    If plaintiff had any right of action at all it was under the provisions of section 5089—after demand in writing and not under section 5088.    McHose v. Ins. Co., 4 Mo. App. 514; May v. Luckett, 54 Mo. 437; DeGraw v. Prior, 68 Mo. 158; McCartney v. Auer, 50 Mo. 395; Craig v. Donnelly, 28 Mo. App. 342; Greenleaf v. Weakley, 39 Mo. App. 191.

*Norton, Avery & Young* for respondent.

(1)    The bona fides of plaintiff's possession was submitted to the jury under proper instructions, and the jury found for plaintiff.    This court will not disturb the verdict of the jury. DeGraw v. Prior, 60 Mo. 57.    (2)    If Van R. Stewart was and had been in possession, as is abundantly shown by the evidence, since July, 1896, and his household goods were there, together with his stock, farming utensils, feed, etc., and the farm and this stock and other goods were being looked after by William Stewart as the servant or employee of plaintiff, then this was an actual possession by plaintiff.    Willis v. Stephens, 24 Mo. App. 474; Merriwether v. Howe, 48 Mo. App. 155, and cases cited.    (3)    Plaintiff testified that he

was in possession on March 1, 1897, when appellant took possession, and this question was submitted to the jury under proper instructions. So there can be nothing in appellant's third contention. There need be no actual force. Oakes v. Alldredge, 46 Mo. App. 11; Wylie v. Waddell, 52 Mo. App. 226. In an action of forcible entry and detainer, neither the title nor the right to possession is in issue. Merriwether v. Howe, supra, and cases cited.

SHERWOOD, P. J.—Forcible entry and detainer brought by Van R. Stewart against Ben. Miles, before a justice of the peace, and taken by appeal by defendant to the circuit court, and from thence by him by appeal to the Court of Appeals, from which latter tribunal it has been transferred to this court.

George Magruder had bought the *locus in quo*, a farm, and received a conveyance therefor, subject, however, to a deed of trust. After such purchase, he rented to Van R. Stewart, plaintiff, the premises; this was in August, 1896, and the terms of the parol lease were such that it was to continue until March, 1898. It seems to have been the ordinary farm lease, where the rent is paid in kind. As soon as rented, Van R. Stewart moved on to the rented premises, occupying, at first, a small house, and later on, in about six weeks, he moved into a larger house on the premises, then recently vacated by Magruder, his landlord. In the fall of 1896, a sale occurred under the deed of trust, at which one Dewey bought, and supposably received a deed at the time of purchase. As the deed of trust antedated Magruder's acquisition of the land, of course, when the sale under that deed occurred it swept away all subsequently-acquired rights and titles whatsoever. [Lindenbower v. Bentley, 86 Mo. 515; Huff v. Morton, 94 Mo. loc. cit. 410; Meier v. Meier, 105 Mo. 411.] And Dewey then became entitled to the possession of the premises, and could have obtained such possession if there had been rent in

arrear, by proceeding under sections 6397, 6398, 6399, Revised Statutes 1889, now sections 4136, 4137, 4138, Revised Statutes 1899. And he could have proceeded under section 4138 for possession alone, waiving the question of rent. [Blackman v. Welsh, 44 Mo. 41.] And under section 6373, Revised Statutes 1889, now section 4112, Revised Statutes 1899, the effect of such sale *in invitum* divests and transfers the lessor's estate to the purchaser, as effectively as would such lessor's deed; and if this is the case, then such purchaser would have a right to maintain a suit under the law of forcible entry and detainer. This is the clear, and, it seems to us, the correct, intimation given in Gunn v. Sinclair, 52 Mo. 327.

This point was afterwards thus ruled in May v. Luckett, 54 Mo. 437. Upon these authorities it would seem no difficulty would have obstructed Dewey's pathway, in calling upon Van R. Stewart and demanding that the latter attorn to him, or, failing in this, that Dewey could proceed against him for unlawful detainer.

Neither of these methods of procedure, were, however, adopted, nor does it appear that Dewey ever exhibited his deed resulting from the sale of the land under the deed of trust, or formally demanded possession of Van R. Stewart, or that the latter should attorn to him.

After Dewey made his purchase, as aforesaid, Van R. Stewart's wife died, to-wit, on December 28, 1896, and then Van R. Stewart asked his brother, Will Stewart, to move up to the place and keep house for him, take care of his children, and see to things. In consideration of these services, and the further consideration that Will Stewart would help tend the crop, he was to have, after the rent was paid, one-half of the balance of the crop. Plaintiff is positive that he did not rent the premises, nor any part of them to his brother and he was the only witness to this contract, as Will Stewart did not testify at the trial; and Magruder fully supports the testimony

Vol 166 mo—12

of Van R. Stewart that the contract of renting was made be-
tween them alone, and that he rented to Van R. Stewart, and
to no one else.

There was some attempt made on cross-examination of
Van R. Stewart to make out that Will Stewart was a *partner*
of his in regard to the crop, but it was hardly to be expected
that an ignorant man such as Van R. Stewart, evidently is,
could tell off-hand in what *a partnership consisted,* or what
were its prominent characteristics, when some of our highest
courts have sometimes contrived to get up some very acute
blunders on that very point.

And, indeed, it has been determined by this court, that
such an agreement, as the one above stated, does not constitute
*a partnership.*    [Donnell v. Harshe, 67 Mo. 170.]

Well, plaintiff's brother, Will, moved on to the rented
premises two days after plaintiff's wife died, that is, on the
thirtieth of December, 1896. To use plaintiff's own language:
"I reckon you call it *move; he come up* the next morning, the
thirtieth of December, and that's about all he moved." Which
statement calls to mind the proverbial story about a removal
which only consists in whistling for the dogs and putting out
the fire.    After Will Stewart had thus *moved,* he occupied the
house his brother was then in, using his brother's furniture,
cooking stove, etc., his brother and one child living with him;
Will Stewart's family consisting of himself, wife and several
children.    After Will Stewart had thus become a co-occupant
with his brother of the large house on the place, he bought
a horse and made an arrangement with his brother, whereby
the latter was to let him have sufficient of his corn then on the
place to feed on, "and he could pay it back in the fall, that is,
if we raised a crop, understand."

Things continued in that way until sometime in January
or February, 1897, when plaintiff hired to Magruder, for one
month, in order to pay his debts, as he was, as he stated to his
counsel, "a very poor man." The compensation he was to

receive was sixty cents a day, with board and lodging for himself and one child which he took with him over to Magruder's, and feed for his horse.

Plaintiff, at the time he went over to Magruder's to work for him, took with him for his own convenience, a bed, a center table and heating stove, leaving behind him with his brother, a table, a cook stove, a safe, some dishes, some chairs and several small articles, and his brother continued in the use and occupation of these articles and of the house, which plaintiff, as he says, considered his home, and that it was his home, as it was the only home he had.

Plaintiff also left in the pasture on the place three hogs, one of which belonged to him individually; the other two belonged to Magruder, and he was feeding them on the shares, and these Will Stewart was to attend to, and did so, during his brother's absence.

Plaintiff also left behind on the place a lot of corn and corn-fodder, a two-horse plow, a disk which plaintiff "had done spoke for," and perhaps a wagon. On Sunday, the last day of February, 1897, plaintiff, whose month it seems had expired or nearly so, went down to the premises where his brother Will was living (though temporarily absent); saw Dewey, and told him he would not give up possession. Dewey denies this statement. One of plaintiff's children was on the place at the time.

On Tuesday next after the Sunday mentioned, Miles, in the absence of Van R. Stewart and without his consent, obtained possession of Will Stewart, the brother, just as Dewey had previously told Miles, Will Stewart would do; and for this obliging conduct, Dewey paid Will Stewart $2, ostensibly to enable Will Stewart to get a team to move away with; but what Will Stewart had brought to the place has already been stated.

On the question of abandonment of the possession by plaintiff, there was, as previously stated, some conflict, but on

this point of abandonment the court fairly instructed the jury. The court also instructed the jury as follows:

"If the jury find from the evidence in the case that plaintiff sublet the premises sued for in whole or in part to his brother, William Stewart, then this action can not be maintained by plaintiff. *But if plaintiff merely hired William Stewart to come upon the premises, and with his family keep house for plaintiff and said William was to further assist plaintiff in the cultivation, of the crops, and was to receive as his compensation for such housekeeping and labor in the crops one-half of the proceeds of the crops, after payment of rent, then said William was not in possession of the premises, either singly or in conjunction with plaintiff*."

As heretofore seen, there was no evidence of subletting to his brother by plaintiff. So that the court, after leaving out the words "proceeds of," and embracing the words embraced within the asterisks, should, as there was no conflict on this point, have peremptorily told the jury that in the circumstances stated in the instruction, Will Stewart was not in possession of the premises. If not in possession of the premises, of course Will Stewart was powerless to yield possession to Dewey or Miles.

And the jury was correctly instructed by the court upon section 5102, Revised Statutes 1889, now section 3334, Revised Statutes 1899, that "the complainant should not be compelled to make further proof of the forcible entry or detainer than that he was lawfully possessed of the premises, and that the defendant unlawfully entered into and detained or unlawfully detained the same." [Dennison v. Smith, 26 Mo. 487; Wunsch v. Gretel, Ib. 580, and cas. cit.]

And the jury were correctly instructed that in order to hold possession the law did not require, on plaintiff's part, a *pedis possessio,* etc. But look at the matter in another light: Even if plaintiff had partly sublet the premises to Will Stewart, although such subletting under the statute would have

been void as against *Magruder*, the *landlord*, yet, it would doubtless be valid as between the sublessor and the sublessee.

Taking it on this basis then, that of a *subletting*, still this does not at all help the plight of the defendant because the act of Will Stewart in letting Miles into possession, was in derogation of the title of his immediate landlord, and of the title of the original lessor, Magruder, neither of which titles could Will Stewart dispute.

It is familiar learning that a lessee can not dispute the title of his landlord (Emmel v. Hayes, 102 Mo. loc. cit. 199, and cas. cit.) until and unless he first surrender possession to his landlord, when, having done so, then he can resume possession and successfully dispute such title.   [Emmel v. Hayes, 102 Mo. loc. cit. 199 and cas. cit.]   And the estoppel binds the tenant's privies as well as the tenant.   [Bigelow on Estop., 512.]

And the same rule holds as to a sublessee being forbidden to dispute the title of the original lessor.   [Bigelow on Estoppel (5 Ed.), 513, and cas. cit.]

In acting as Will Stewart did, he necessarily, while remaining in possession, by one and the same act disputed the title both of his *immediate* and his *original lessor*.   *But in doing this tortious act, he conferred no legal possession on Miles.*   And if Will Stewart is to be regarded as a mere *licensee* of Van R. Stewart, he lies under the same ban and disability as does a disputatious tenant.   [Bigelow on Estop., 542, and cas. cit.]   So that, whether Will Stewart be called *sublessee* or *licensee,* does not vary the result.

On this subject the Supreme Court of Illinois has very well said:   "It is a well-settled rule of law that a tenant can not dispute the title of his landlord.   He must restore the possession to the landlord before he can assail his title.   If he disclaims the title of his landlord, and claims the premises adversely for himself or another, his possession from that moment becomes tortious.   This principle is strictly applicable

to all who succeed to the possession from or through the
tenant.   They occupy the same position, and are held to the
same responsibility.   In Carter v. Marshall (72 Ill. 609), it
was held that where a party in possession of premises accepts
a lease, and occupies under it, he is estopped to deny his land-
lord's title until the parties are placed in original positions;
and it makes no difference that the tenant may have been in
possession as the tenant of a former landlord; he is precluded
from denying the title of either."   It was also said, "No dis-
pute as to the title will be tolerated, until the parties are
placed in their original position."   [Fleming v. Mills, 55 N.
E. 373, and McAdam, Land & Ten., pp. 1344, 1345.]

Holding these views, we reverse the judgment of the
Court of Appeals, and remand this cause to that court, with
directions to enter a judgment affirming the judgment of the
circuit court.   All concur.